IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KENNETH J GUENTHER,

      Petitioner,

v.                                                    CASE NO. 1:08-cv-241-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  The Petition stems from Petitioner's 2005 Alachua County jury-trial conviction for DUI manslaughter (failure to render aid or give information), for which he was sentenced to 20 years' imprisonment.  Respondent filed a response and an appendix with relevant portions of the state-court record.  Docs. 17, 18. Petitioner was afforded an opportunity to file a reply, but did not do so.  Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

Petitioner was charged by amended information with one count of second-degree murder (Count I), one count of DUI manslaughter - failure to render aid or give information (Count II), and one count of leaving the scene of an accident involving death

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

(Count III).   Exh. A.  The relevant evidence adduced at trial (*see* Exh. B), may be summarized briefly as follows.  The State's theory of the prosecution was that Petitioner, while under the influence of alcohol and behind the wheel of his truck, had an argument with the victim (John Rushing) over some rings Petitioner wanted to sell.  Petitioner grabbed Rushing in a headlock through the open truck window, then drove away and dragged Rushing for approximately 300 feet.  Petitioner then dropped Rushing to the pavement, and the back wheels of the truck ran over him, causing his death.  In support of this theory, the State presented the testimony of Anthony Blair, who was socializing with the victim and Tony Larkin at the time of the incident.

The State also presented the testimony of Shirl Guenther, Petitioner's wife, who testified that she and Petitioner argued earlier in the day, that she gave her wedding rings back to Petitioner, and that she observed Petitioner drink a pint of vodka and some beer before he left the house with the rings.   On cross-examination, defense counsel, Holly Stacy, impeached Mrs. Guenther with her prior deposition testimony, in which she testified that she did not see Petitioner drink the vodka and did not see the empty bottle.

A toxicologist testified that Petitioner's blood was drawn at 3:40 a.m., following his arrest several hours after the incident.  At that time, Petitioner's blood alcohol level was .148.  On cross-examination by defense counsel, the toxicologist testified that it could not be determined when Petitioner consumed the alcohol, and that she could not determine whether the alcohol had been consumed at some point after the incident and prior to the blood draw.

Petitioner's theory of defense was that he was not intoxicated at the time of the incident, and that he believed that the other men were trying to steal the rings from him.

He testified that Rushing hit him with a broken beer bottle and reached into the truck to grab the rings from Petitioner.  There was a struggle, and then Rushing grabbed Petitioner around the head and neck.  Petitioner admitted that he had consumed a bottle of beer earlier in the day and a mixed drink in the evening from a pint bottle of vodka. Petitioner testified that he was sober during the incident, and drank the rest of the vodka after he drove home.  Petitioner denied knowing that he had run over Rushing.

Petitioner called Larkin as a witness, and Larkin testified that Rushing might have hit Petitioner in the head with a beer bottle.  On cross-examination, Larkin testified that Petitioner grabbed Rushing in a headlock before driving away, and he denied that the men were trying to steal Petitioner's rings.  Larkin testified that Petitioner was "drunk," "high" and "messed up."  Exh. B. at 144.

Petitioner also called an emergency room physician, Dr. Yucht, as a witness.  Dr. Yucht diagnosed Petitioner with acute cervical strain after the incident, and observed superficial lacerations on Petitioner's face.

The prosecutor's closing argument referenced the contradictory scenarios that had been presented by the prosecution and the defense, and suggested to the jury that if they believed the testimony of Blair and Larkin, which was consistent with the State's theory, and if that testimony "convinces you beyond a reasonable doubt, Mr. Guenther is guilty.  You don't have to consider his defense, his testimony or anything else."   The prosecutor then added "of course, you can.  And what I'm going to suggest a little later is that Mr. Guenther's testimony is evidence of his guilt, not his innocence."  Exh. B. at 241-42.

The prosecutor then argued that the State's witnesses were credible, and invited

the jury to use their own cumulative life experiences to evaluate the witnesses'
credibility.  He acknowledged that Blair and Larkin had criminal records, and stated that
it was the jury's prerogative to disbelieve their testimony, but that the "State hopes you
won't because of the way they testified," referencing the witnesses' forthrightness and
demeanor, and the consistency of the testimony with the physical evidence.  The
prosecutor contrasted Petitioner's testimony that he had been hit in the face with a
broken beer bottle, and contended that Petitioner's testimony was not consistent with the
physical evidence.  *Id*. at 243-46.

Petitioner's counsel argued in closing that the prosecution's theory defied
common sense in that there was no motive for the alleged action by Petitioner, Petitioner
did not have the physical strength to commit the alleged act, the victim's gold chains did
not fall off and he had no neck injury, and Blair and Larkin could not have seen what
happened after Petitioner drove away.  Ms. Stacy argued at length that Blair's testimony
was not believable in many respects.  She suggested that Blair, a seven-time convicted
felon who had just been released from prison, was lying about the beer bottle, and that
"lies are coming from Mr. Blair."  *Id*. at 262.

In rebuttal, the prosecutor observed that the case would be judged "by all of the
evidence; not just the witnesses that they called, but all of the witnesses . . . . if the
Defendant chooses to testify, you judge his testimony just like anybody else's. . . . the
greatest evidence, I suggest, of guilt is a lie.  If you find that Mr. Guenther's not telling
the truth about the attempted robbery, I think you can reasonably conclude that he's
guilty of the crimes he's charged with."  The prosecutor then argued at length regarding
his view of the inconsistencies in Petitioner's testimony.  He concluded that "if you

believe what he said about, "I didn't know I ran over anybody," then consider self-

defense.  But if you think that he's not telling the truth about whether or not he knew or

had to know that the rear wheel of his victim [sic] went over a man who he had just

killed, then you will find, from that reason alone, his guilty knowledge and his flight, his

guilt beyond a reasonable doubt."  *Id*. at 275-80.

Ms. Stacy did not interpose objections to the closing argument.  The jury returned

a verdict of guilty of the lesser-included offense of manslaughter on Count I, guilty as

charged on Count II, and guilty as charged on Count III.   Exh. C.  After the verdict was

announced, defense counsel asked to poll the jury.  In doing so, the clerk of called the

names of five jurors, but did not call the name of the sixth juror.  *Id*. at 305.  On

December 14, 2005, the trial court sentenced Petitioner on Count II to 20 years in

prison.  Exh. D.[2]

Petitioner appealed, challenging the sufficiency of the evidence of intoxication

and arguing that his right to due process was denied when the prosecutor told the jury

that it did not have to consider the defense evidence.  The First DCA affirmed, per

curiam, without a written decision.   Exh. G.

Petitioner filed a motion for postconviction relief raising four claims of ineffective

assistance of counsel.  Petitioner argued that his counsel failed to object to the "non-

unanimous jury verdict;" failed to object to improper closing argument; failed to assert

the spousal privilege to preclude his wife's testimony and failed to impeach her

testimony; and failed "to pursue evidence" that Petitioner was not intoxicated at the time

---

[2]The parties stipulated that Petitioner could only be sentenced for his conviction
for Count II.  *See* Exh. B. at 311.

of the incident.  Exh. M.   The postconviction court determined that no evidentiary

hearing was necessary and denied relief.   Exh. N.  The First DCA affirmed, per curiam,

without written opinion.  Exh. T.

The instant habeas petition followed.  Respondent concedes that the Petition is

timely, and that Petitioner's claims are exhausted.  Petitioner asserts the same four

grounds for relief as raised in his state postconviction motion.  Doc. 1.

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made

by a State court shall be presumed to be correct," and the petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir.

2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions

for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## Ineffective Assistance of Counsel

The state postconviction court assessed Petitioner's claims under the standards

enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.*

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of

[the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### (1) Failure to Object to Non-Unanimous Jury Verdict

Petitioner contends that his counsel rendered deficient performance by failing to object to a non-unanimous jury verdict. Doc. 1. The only evidence identified by Petitioner in support of his claim that the verdict was not unanimous is the fact that the court clerk failed to call the name of the sixth juror in polling the jury. *Id*.

In rejecting this claim on postconviction review, the state court concluded that while the jury was, apparently, improperly polled, that fact does not equate to a non-unanimous verdict. The court cited *Rivera v. Conway*, 350 F. Supp. 2d 536, 547 (S.D.N.Y. 2004), as support for rejecting the claim. In that case, the district court concluded that a claim similar to Petitioner's was "frivolous" because the record clearly

showed that the verdict was unanimous, notwithstanding that no response was recorded for some of the jurors when they were polled.  When the verdict in that case was read, the court clerk asked the foreperson "so say you all?" and the foreperson replied "yes"; no juror objected.  *Rivera,* 350 F. Supp. 2d at 547.   In the instant case, in reading the verdict form aloud the Clerk recited "so say we all," as set forth on the verdict form.  No juror objected that they did not assent in the verdict.  Exh. B at 304-05.  In *Rivera*, the court concluded the polling errors reflected on the transcript were merely transcription errors.  *Rivera*, 350 F. Supp. 2d at 547.  Even if the polling error identified by Petitioner in the instant case is not a mere transcription error, there is nothing in the record that suggests the sixth juror did not assent in the verdict.

In the absence of any evidence to the contrary, the record supports a conclusion that the verdict was unanimous.  The trial court specifically instructed the jury that the verdict must be unanimous.  Exh. B at 297-98.   Before the jury began deliberations, the judge read aloud the verdict form and stated, "[y]our verdict finding the defendant either guilty or not guilty must be unanimous. The verdict must be the verdict of each juror as well as of the jury as a whole."  *Id*. at 300.   The verdict form's affirmation of "so say we all" reflects unanimity.  Exh. C.

Where there is nothing in the record to indicate that the verdict was not unanimous, counsel's failure to object when the sixth juror was omitted from polling does not provide a basis for relief on ineffective-assistance grounds.  *See United States v. Costa*, 691 F.2d 1358, 1363-1364 (11th Cir. 1982) ("Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases.");

*Rivera*, 350 F. Supp. 2d at 547-48.  Petitioner has failed to show that the state court's conclusion that counsel did not err was contrary to or an unreasonable application of *Strickland*.

## (2) Improper Closing Argument

Petitioner contends that his counsel performed deficiently by failing to object to comments in closing argument that allowed the jury to disregard defense evidence and shifted the burden of proof to him.  Doc. 1 at 9.  Petitioner points to four specific comments: "if you believe Mr. Blair and Mr. Larkin, you don't have to go any further;" "if it convinces you beyond a reasonable doubt, Mr. Guenther is guilty.  You don't have to consider his defense, his testimony or anything else;" "[i]f you find that Mr. Guenther's not telling the truth about the attempted robbery, I think you can reasonably conclude that he's guilty of the crime he's charged with;" "if you think that he's not telling the truth about whether or not he knew [that his wheels had gone over the victim] then you will find, from that reason alone, his guilty knowledge and his flight, his guilt beyond a reasonable doubt."  Doc. 1 at 9.

The state court rejected this claim on postconviction review based on a determination that the comments fell within the scope of permissible argument, in the context in which the comments were made.  Because the comments were permissible, counsel did not perform deficiently by failing to interpose an objection.  Exh. O.

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances.  *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978).   "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the

broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir.

1987).  The Court applies a two-step process in reviewing such a claim: (1) the Court

considers whether the argument was improper; and (2) whether any improper argument

was so prejudicial as to render the trial fundamentally unfair.  *Id*. at 1526.  Thus, "'[t]he

relevant question is whether the prosecutors' comments 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"  *Id*. at 1526-27

(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  A trial is fundamentally unfair

if there is a reasonable probability that but for the prosecutor's improper remarks, the

outcome of the trial would have been different.  *Williams v. Kemp*, 846 F2d 1276, 1283

(11th Cir. 1988).

        In this instance, the state court concluded that the comments themselves –

viewed in the context in which they were made – did not constitute improper closing

argument.  Petitioner has shown no error in this conclusion.  As set forth above in this

Court's summary of the closing argument, in comments subsequent to the isolated

phrases identified by Petitioner the prosecutor stated to the jury that they should

consider *all* of the evidence and testimony presented, including Petitioner's.  Because

Petitioner's defense relied on his assertion that he was defending himself from an

attempted robbery, it was reasonable for the prosecutor to suggest that if the jury did not

believe Petitioner's version of the events, then the evidence supported a finding of guilt.

In the same vein, it was reasonable for the prosecutor to argue that if the jury did not

believe Petitioner's claim that he was unaware he had run over the victim, then such

evidence of guilty knowledge and flight supported a finding of guilt.

        Even if any of the prosecutor's comments were arguably objectionable, Petitioner

has failed to show that he was prejudiced by counsel's failure to object because viewing the record as a whole he has not shown that the cited comments rendered his trial fundamentally unfair.  Petitioner's counsel vigorously attacked the evidence and the credibility of the State's witnesses in her own closing arguments, and highlighted the inferences from the evidence that favored Petitioner.  In the absence of any showing of prejudice, Petitioner has failed to show that the state court's rejection of this claim was contrary to or an unreasonable application of *Strickland*.

### (3) Failure to Assert Spousal Privilege

Petitioner contends that his counsel rendered ineffective assistance by failing to assert a spousal privilege in order to exclude damaging testimony by his wife.  Doc. 1 at 11.  The state court rejected this claim on postconviction review based on the court's conclusion that Petitioner's act of drinking was not a communication that is protected under any state-law spousal privilege.  Exh. O.  Petitioner has shown no error in this conclusion.  While Florida law protects confidential communications between a husband and wife, the privilege does not extend to "independent facts gained by his or her own observations and knowledge and not from any written or oral communication."  *Kerlin v. State*, 352 So.2d 45, 50 (Fla. 1977).  Further, any claim by Petitioner that his counsel failed to impeach his wife's testimony with her contradictory deposition testimony is refuted by the record.   *See* Exh. B at 63-64.   Petitioner has failed to show that the state court's rejection of this claim was contrary to or an unreasonable application of *Strickland*.

### (4) Failure to Pursue Evidence that Defendant was not Intoxicated

Petitioner contends that his trial counsel rendered ineffective assistance by failing

to pursue evidence that he was not intoxicated during the incident.  Petitioner argues that his counsel did not challenge the admissibility of the blood alcohol test, "knowing that Petitioner had drunk after returning home from the incident, and before the blood alcohol test was administered over three hours later."  Doc. 1 at 12.  The state court rejected this claim on postconviction review because there was other evidence that Petitioner had been drinking before the incident, including his own testimony and the testimony of other witnesses.  The court further noted that counsel did in fact raise the issue on cross-examination of the toxicologist as to whether the test result accurately reflected Petitioner's level of intoxication at the time of the incident.  Exh. O.

Petitioner identifies no other evidence that counsel failed to pursue.  Counsel introduced the argument that Petitioner drank after the incident through Petitioner's own testimony.  Exh. B at 197-98.  Counsel impeached Mrs. Guenther's testimony that Petitioner drank a pint of vodka prior to the incident.  *Id*. at 60-64.  Counsel cross-examined the toxicologist on the accuracy of the blood alcohol test, and the toxicologist admitted that the test did not show when the alcohol was consumed.  *Id*. at 109-10.  Defense counsel argued all of this evidence in closing argument.  On this record, Petitioner has failed to establish either the deficient performance or prejudice prongs of *Strickland*, and has not shown that the state court's rejection of this claim was contrary to or an unreasonable application of *Strickland*.

For all of the foregoing reasons, the Court concludes that the Petition, Doc. 1, should be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 16th day of February 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.